FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 19 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| CHONG AE HAN, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| vs. | § | 1 09-cv-1641 |
| | § | CIVIL ACTION NO. _____ |
| MORTGAGE LENDERS | § | |
| NETWORK USA, INC.; | § | |
| GMAC MORTGAGE, LLC; | § | |
| AMERICA'S SERVICING | § | |
| COMPANY; WELLS FARGO | § | |
| BANK, N.A.; MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | |
| SYSTEMS, INC., and DOES 1-50, | § | |
| inclusive, | § | |
| | | |
| **Defendants.** | | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, Defendants GMAC

Mortgage, LLC ("GMACM") and Mortgage Electronic Registration Systems, Inc.

("MERS") (collectively "Removing Defendants") hereby remove this case from

the Superior Court of Georgia, Gwinnett County, to the United States District

Court for the Northern District of Georgia, Atlanta Division, and respectfully state

as follows:

## STATEMENT OF THE CASE

1.     On May 12, 2009, an action was commenced in the Superior Court of Georgia, Fulton County, entitled *Chong Ae Han v. Mortgage Lenders Network USA, Inc., et al*, Case No. 09A-04320-10 (the "State Court Action"). True and accurate copies of the summons and complaint in the State Court Action (the "Complaint") are attached hereto as "Exhibit A."

2.     GMACM was served with a copy of the Complaint on May 27, 2009. MERS was served with a copy of the Complaint on May 22, 2009. This Notice of Removal is being filed within 30 days of receipt of the Complaint. Removal is therefore timely in accordance with 28 U.S.C. § 1446(b).

3.     The Complaint purports to assert eleven causes of action, identified and/or generally alleged as follows: (1) violation of the Georgia Uniform Deceptive Trade Practices Act, (2) violation of the Georgia Residential Mortgage Act, (3) breach of imputed duty per Georgia Fair Business Practices Act, (4) fraud, (5) fraud in the inducement, (6) conversion, (7) quiet title, (8) libel, (9) civil conspiracy, (10) violation of Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"), and (11) petition for interlocutory injunctive relief.

## FEDERAL QUESTION JURISDICTION

4.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States.  The Supreme Court has held that "a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law. *Franchise Tax Bd. V. Construction Laborers Vacation Trust,* 436 U.S. 1, 9 (1983). Further, as the Eleventh Circuit has recognized, federal question jurisdiction arises where a party has asserted an action under Georgia RICO and the underlying violations involved federal mail fraud.  *Ayres v. General Motors Corp.,* 234 F.3d 514, 517-18 (11th Cir. 2000).

5.     Here, Plaintiff has alleged federal mail fraud as part of the alleged RICO scheme.  *See* Exhibit A, ¶ 110.  Accordingly the resolution of this matter turns upon federal questions, and this Court has jurisdiction.

6.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the state law and common law claims asserted by Plaintiff because those claims asserted form part of the same case or controversy.

7.     Defendants GMACM and MERS have consented to the removal of this action.

8.     Upon information and belief, no other defendants have been served in this action, as no return of service has been filed with the Superior Court of Georgia, Gwinnett County as of June 18, 2009, or are nominal or unknown defendants, and therefore, additional consent to this removal is not required. *See Tri-Cities Newspapers, Inc. v. Tri-Cities P.P. & A Local 349,* 427 F.2d 325, 326-27 (5th Cir. 1970); *Salveson v. Western States Bankcard Ass'n.,* 731 F.2d 1423, 1429 (9th Cir. 1984). Accordingly, all properly served and joined defendants, excluding nominal, unknown and fraudulent joined parties, have consented to this Notice of Removal.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the United States District Court for the Northern District of Georgia, Atlanta Division, is the federal judicial district and division embracing the Superior Court of Georgia, Gwinnett County, where the State Court Action was originally filed.

10.    Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all the process, pleadings, and orders on file in the State Court Action or served on the Removing Defendants are attached collectively hereto as "Exhibit B."

## CONCLUSION

WHEREFORE, Defendants GMACM and MERS hereby remove this Action from the Superior Court of Georgia, Gwinnett County to the United States District

Court for the Northern District of Georgia, Atlanta Division.  By this Notice of Removal and the associated attachments, Removing Defendants do not waive any objections they may have as to service, jurisdiction or venue, or any other defenses or objections they may have to this action.  Removing Defendants intend no admission of fact, law or liability by this Notice, and expressly reserve all defenses, motions and/or pleas.  Removing Defendants pray that the State Court Action be removed to this Court, that all further proceedings in the State Court Action be stayed, and that Removing Defendants receive all additional relief to which they are entitled.

This the 19th day of June, 2009.

Respectfully submitted,

Paul T. Kim
Georgia Bar No. 418841
LOCKE LORD BISSELL & LIDDELL, LLP
The Proscenium, Suite 1900
1170 Peachtree Street, NE
Atlanta, GA 30309
(404)-870-4678 - *telephone*
(404)-872-5547 - *facsimile*
pkim@lockelord.com

*Attorneys for Defendants GMAC MORTGAGE, LLC and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this Notice of Removal was prepared using Time New Roman 14 point , in accordance with L.R. 5.1(B).

Paul T. Kim
Georgia Bar No. 418841
LOCKE LORD BISSELL & LIDDELL, LLP
The Proscenium, Suite 1900
1170 Peachtree Street, NE
Atlanta, GA 30309
(404)-870-4678 - *telephone*
(404)-872-5547 - *facsimile*
pkim@lockelord.com

*Attorneys for Defendants GMAC MORTGAGE, LLC and  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.*

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

### STATE OF GEORGIA

2009 MAY -8  PM 2: 17

TOM LAWLER. CLERK

CHONG AE HAN,  )
                )
        Plaintiff,  )
                )
    vs.  )
                )  Civil Action No:_____
                )
MORTGAGE LENDERS  )
NETWORK USA, INC..;  )
GMAC MORTGAGE, LLC;  )
AMERICA'S SERVICING COMPANY;  )
WELLS FARGO BANK, N.A.;  )
MORTGAGE ELECTRONIC  )
REGISTRATION SYSTEMS, INC.; and  )
DOEs 1-50, inclusive  )
                )
        Defendants.  )
                )

09146 01480

BRYAN K MCMANIS
CERTIFIED PROCESS SERVER
FIFTH JUDICIAL CIRCUIT FLORIDA
ID# 043-7
DATE 5-22-09   TIME 1:45 PM
SERVED _____
Registered Agent

## COMPLAINT

Plaintiff, CHONG AE HAN , (herein known as "Plaintiff"), by and through his

attorney, hereby files this complaint against Defendants MORTGAGE LENDERS

NETWORK USA, INC.; GMAC MORTGAGE, LLC, f/k/a/ GMAC Mortgage

Corporation; AMERICA'S SERVICING COMPANY; WELLS FARGO BANK, N.A.,

d/b/a America's Servicing Company; MORTGAGE ELECTRONIC REGISTRATION

SYSTEMS, INC.; and DOEs 1 through 50, inclusive, (hereinafter collectively known as

"defendants") alleging and showing the Court the following:

1

158203

## PARTIES

1.      Plaintiff currently owns property located at 955 White Birch Way, Lawrenceville, Georgia, Gwinnett County (hereinafter "Subject Property").

2.      Upon information and belief, Defendant, MORTGAGE LENDERS NETWORK USA, INC. at all times mentioned herein regularly conducts business in and throughout the State of Georgia.

3.      Upon information and belief, Defendant, GMAC MORTGAGE, LLC, f/k/a GMAC Mortgage Corporation at all times mentioned herein regularly conducts business in and throughout the State of Georgia.

4.      Upon information and belief, Defendant, AMERICA'S SERVICING COMPANY at all times mentioned herein regularly conducts business in and throughout the State of Georgia.

5.      Upon information and belief, Defendant, WELLS FARGO BANK, N.A., d/b/a America's Servicing Company at all times mentioned herein regularly conducts business in and throughout the State of Georgia.

6.      Upon information and belief, MORTGAGE ELCTRONIC REGISTRATION SYSTEMS (hereinafter referred to as "MERS") at all times mentioned herein regularly conducts business in and throughout the State of Georgia.

7.      Plaintiff is ignorant of the true names and capacities of defendants sued as DOEs 1-50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

2

8.      Plaintiff is informed and believes, and based on information and belief, alleges that at all times mentioned in this complaint defendants were agents, servants, partners and/or employees of co-defendants, and in doing the actions mentioned below were, unless otherwise alleged, within the course and scope of their authority as such agent, servant, partner, and/or employee with the permission and consent of co-defendants.

9.      Any allegations about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority and/or within the scope of their agency if acting as an agent of another.

10.     Plaintiff believes and is informed and, on that basis, alleges that each of the said defendants, including the DOE defendants, were in some manner legally responsible for the unlawful actions, unlawful policies, and unlawful practices, complained of herein. Each defendant committed the acts alleged in this Complaint.

11.     Additionally, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing the other defendants were engaging or planning to engage in unlawful conduct, each defendant nevertheless facilitated and even directed or assisted in the commission of the unlawful acts.  Each defendant intended and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.  Plaintiff will amend this Complaint to set

3

forth the true names and capacities of said Defendants, along with the appropriate charging allegations when the same have been ascertained.

12.     At all relevant times, defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in violations of law alleged in this Complaint.  This conspiracy, common enterprise, and common course of conduct continue to the present.

13.     Whenever reference is made in this Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

14.     Venue and jurisdiction is proper in this court because injury and damage to Plaintiff occurred in its jurisdictional area, the property is located in this jurisdictional area and the unlawful practices were committed in this jurisdictional area.

## GENERAL ALLEGATIONS

15.     This action is brought against Defendants, who unlawfully committed deceptive and unfair business practices, fraud, fraud in the inducement, conversion, cloud on title, and defamation, warranting remedies and judgment at law for damages as well as equitable injunctive relief.

16.     Defendants are mortgage lenders, servicers and/or trustees.  Defendants' residential lending business model consists of making as many residential loans and/or loans made to borrowers with limited or impaired credit.

4

17.     Defendants did business as wholesale lenders. That is, mortgage brokers, under contracts with Defendants and working closely with defendants' sales representatives, originated loans which were underwritten by defendants.

18.     Defendants sold a majority of their residential loans to the secondary market, that is, third-party investors or qualifying special-purpose entities that issue interest-bearing securities representing the loans' interest stream. After selling the loans for securitization or to third-party investors, defendants typically were required to repurchase those loans only in limited circumstances, for instance, in the event of documentation errors, underwriting errors, fraud, or early payment defaults.

19.     While Defendants claimed to maintain underwriting guidelines that assessed the ability of the Plaintiff to repay debt, they purposefully relaxed their underwriting guidelines and sold a risky loan product to Plaintiff to increase their loan origination volume. Defendants' underwriting standards eventually grew so lax that in many instances, its underwriters took no meaningful steps to determine whether borrowers like the Plaintiff could actually repay a loan for the purpose of funding higher loan volumes for leveraged returns.

20.     Defendants violated and ignored the law by failing to clearly and conspicuously disclose to Plaintiff key provisions of Plaintiff's mortgage, including but not limited to such details as the eventually reset interest rate, specific loan terms, and the total dollar amount the mortgage will cost over time.

21.     Defendants violated the law when it provided undisclosed financial incentives, fees, payments and other things of value to its agents, account executives, loan officers,

5

and brokers marketing and selling its product, said payment and incentives constituting a prohibited kickback, referral fee or other things of value.

22.     Defendants' business model of making loans for quick resale rendered defendants indifferent to whether Plaintiff could afford the loan beyond defendants' exposure period to risk. This risk period was in effect only as long as it was required to sell the loan to the secondary market. This indifference translated into defendants maximizing loan resale profits through funding unfair and exceedingly risky loan products, engaging in unfair underwriting practices, and conducting deceptive loan sales practices through its own conduct and the conduct of mortgage brokers, in order to sell an illegal and fraudulent loan to the unsuspecting Plaintiff.

23.     Defendants focused on creating unduly risky loans for profitability. Defendants received fees not only for originating loans but for reselling pre-packaged loan bundles or securities at a guaranteed rate of return. Due to defendants' compensation structure and policies, employees, brokers, loan officers, and related defendants were encouraged to steer Plaintiff into costly mortgages and for a larger amount in order to maximize their profits. To support Plaintiff's application for the unduly risky loan, defendants through its employees, agents, sale representatives and the mortgage brokers and appraisers inflated the appraised value of the applicant's home. The defendants, intentionally or recklessly, failed to verify or audit the information and avoided implementing reasonable measures that would have prevented or limited these fraudulent practices.

24.     To further increase the Defendants' revenue, Plaintiff's loan was not designated for long-term viability. This business model relied on perpetual increase in Plaintiff's

6

home valuation. As soon as the housing market flattened Plaintiff incurred substantial negative equity in the property.

25.     Defendants also attempted to increase their profit margins and the amount of loans generated by creating residential mortgage loans ("RML") and other loans in the form of adjustable rate mortgages ("ARMs") that Defendants sold to Plaintiff. This ARM was a mortgage that contained an introductory rate for the first period of the loan. After the fixed period, the interest rate of the ARM would adjust, generally substantially upwards, and would increase monthly payments that the defendants knew the Plaintiff could not likely pay, eventually causing the Plaintiff to default and/or to have their home foreclosed upon.

26.     In the instant case, Defendants offered Plaintiff only risky options, ARMs with interest payment only feature and balloon payment, even though they qualified for other loan options that were safer and more reasonable.

27.     Defendants offered and marketed aggressively ARMs with interest payment only feature and balloon payment as "prime" products, which enticed consumers like Plaintiff by offering a teaser low rate for a short period and at the end of that period, interest rate that could increase dramatically that could change at a minimum every year.

28.     To further the deceptive and unfair practices defendants knew that the types of ARMs with interest payment only feature and balloon payment provided to Plaintiff were complicated mortgage products that consumers would not understand as to its actual cost and risk of default inherent in such a rate structure.

7

29.     During the underwriting and selling of ARMs with interest payment only feature

and balloon payment to borrowers, including the Plaintiff, defendants never explained the

inevitable payment shock and/or significant increase he could face.

30.     Moreover, if sold in the secondary market, ARMs with interest payment only

feature and balloon payment could be sold for higher premiums versus other loans

because the higher margins would produce a greater interest rate and therefore a larger

income stream. To insure an abundant stream of such highly profitable loans, defendants

pushed its loan officers and brokers to aggressively steer borrowers to ARMs with

interest payment only feature and balloon payment, providing greater compensation for

these types of loans.

31.     Defendants and its brokers misrepresented the true terms of the loan, including

but not limited to misrepresenting or obfuscating risks and dangers of ARMs with interest

payment only feature and balloon payment and the payment shock and/or significant

increase he could face, that the initial minimum payment would increase and would not

apply for the life of the loan, and the danger of inability to refinance to a fixed reasonable

mortgage rate.

32.     In furtherance of their deceptive and illegal practices, defendants worked with

appraisers and other agents to inflate the value of borrowers' homes, including the

Plaintiff's home. Through defendants' policies of choosing the appraiser and hiring only

appraisers that would appraise the value of the property at whatever the defendants' loan

called for, defendants could increase the property value and therefore increase the loan

amount subsequently raising their fees in the process. By increasing the value of the loan,

8

defendants would be able to resell the RML at a higher price to increase their profit margins.

33.     The defendants knew or should have known that Plaintiff's loans would likely result in default and foreclosure, particularly in light of their qualification of Plaintiff's ability to pay based only on their ability to pay and their reliance on serial refinancing, which in turn relied on a false assumption of perpetual home price appreciation. Defendants' lack of underwriting standards also contributed to the inability of the Plaintiff to pay following the initial and deceptive teaser interest rate period by intentionally or neglecting to adequately review borrowers financial and employment documentation.

**I. DEFENDANTS' LOANS ARE STRUCTURALLY UNFAIR, DESIGNED TO BE DIFFICULT TO UNDERSTAND DUE TO THEIR MULTIPLE LAYERS OF RISK AND DEFENDANTS TOOK NO MEANINGFUL CONSIDERATION OF WHETHER PLAINTIFF COULD AFFORD TO PAY THE LOANS**

34.     Defendants' deceptive and greedy business model generated a variety of aggressive, exceedingly risky, and unfair loan products reflecting defendants' indifference to whether Plaintiff could afford its loans. Specifically, defendants, through its employees, agents, sale representatives and the mortgage brokers it contracted with, induced Plaintiff into purchasing a deceptive residential loan product that Defendants knew or should have known could result in default and foreclosure.

35.     As discussed further below, defendants' loans to Plaintiff included:

    a.  ARM features consisting of a lower fixed interest rate for a short-term period, followed by an increase to a higher, adjustable rate.

9

b.  Interest payment only and balloon payment;

c.  ARMs with interest payment only features and balloon payment combined with a "stated income", "low doc" or "no doc" features, where Plaintiff needed to only state their income and assets, without providing any documentation to obtain a loan.

36.     Defendants and the mortgage brokers selling its products approved Plaintiff for the loans based only on the initial minimum interest rate without regard to Plaintiff's ability to pay over the life of the loans. These risky loans were the only option offered and recommended to Plaintiff even though defendants knew that a substantial and likely unaffordable monthly payment increase would occur at the end of the initial period. Defendants through its employees, agents, sale representatives and the mortgage brokers selling these loans to Plaintiff failed to meaningfully account for those payment adjustments in approving and selling loans and thereby failed to meaningfully account for Plaintiff's ability to repay the defendants' loans. Typically, defendants viewed these loans as short-term that would require serial refinancing before the loan adjusted which increased fees and revenue for the defendants. However, defendants through its employees, agents, sale representatives and the mortgage brokers failed to meaningfully disclose the possibility of significant interest rate increases inherent in ARMs, as well as the dangers and risks of balloon payment and  interest payment only features and the devastating impact it would have on the monthly payments and Plaintiff's ability to pay this loan. If any statements were made by the defendants in connection with these costs, they were usually about the ease in which refinancing would be available, the increase in

10

property value, and other fraudulent claims designed to induce the borrowers like Plaintiff to sign the loan.

37.       Starting with the predictable risks inherent in ARMs with interest payment only feature and balloon payment, underwriting those loans based on and failing to meaningfully disclose to Plaintiff the dangerous terms and risks of these loans, defendants then added additional layers of risk to the loan product it approved and sold to borrowers like Plaintiff. These additional layers of risk, each of which is common to defendants' loans, include, without limitation:

    a.  Approving a loan that contained features that are known to require prompt refinancing to maintain an affordable monthly payment and avoid defaults or foreclosure;

    b.  Failing to explain to Plaintiff the dangers and costs of ARMs with interest payment only feature and balloon payment;

    c.  Approving borrowers who had inadequate debt-to-income ratios that did not properly consider Plaintiff's ability to meet their overall level of indebtedness and common housing expenses in excess of 50% of monthly earnings; and/or

    d.  Failing to accurately and meaningfully disclose that monthly loan payments do not include additional costs such as property taxes and insurance.

38.       Defendants failed to explain and/or disclose in a meaningful manner the terms and conditions of their loan products and instead provided borrowers like Plaintiff with incomplete or confusing information relative to product features, material loan terms and product risks, and the borrowers' obligations for property taxes and insurances. In

11

particular, defendants encouraged borrowers like Plaintiff not to worry about most loan terms, especially upward adjusting ARMs because defendants would arrange a new loan prior to the ARM adjustment without regard to future property values, economic states, or borrowers' employment stability. Defendants also exacerbated the predictable harm inherent in the interest payment only feature and balloon payment.

39.      Combined, these activities caused over-inflation of the value of the property and subsequently the loan principal which would further increase defendants' bottom lines at a cost and eventual ruin to the Plaintiff's lives.

**II. DEFENDANTS ENCOURAGED MORTGAGE BROKERS UNFAIR AND DECEPTIVE CONDUCT BY REWARDING BROKERS WHO SOLD RISKY AND INAPPROPRIATE LOAN PRODUCTS WITH LITTLE OR NO DOCUMENTATION AND PROVIDED NO MEANINGFUL OVERSIGHT OF BROKERS CONDUCT WITH RISK LACED INCENTIVES.**

40.      Defendants further exacerbated the unfair and deceptive loans described above by relying on third party mortgage brokers to sell its loans. Defendants induced and rewarded these mortgage brokers to originate unduly risky, inappropriate, and in some cases, fraudulent, loans while failing to monitor these brokers' sales and underwriting conduct in a meaningful way.

41.      Driven by its push for market share and profits, defendants did whatever it took to sell more loans, faster – including easing its underwriting criteria and disregarding minimal oversight of mortgage brokers. By easing and disregarding its underwriting criteria, defendants increased the risk that borrowers like Plaintiff would default and lose their home.

12

42.     Defendants and their brokers also relaxed traditional underwriting standards used

to separate acceptable from unacceptable risk in order to produce more loans for the

secondary market. Traditionally, the depth of credit and thereby worthiness of borrowers

played a crucial role in determining whether they could obtain a loan. However, as the

pursuit of profits became the primary goal of defendants, the credit score itself became

most important – the threshold number becoming lower and lower – with disregard for

the borrowers' future ability to pay based on previous payment habits.  Further,

defendants and their brokers began disregarding the importance of loan-to-value ratios,

debt-to-income ratios, and other factors designed to protect borrowers and borrowers'

ability to pay within their means for the entire lifetime of the RML.

43.     Due to the fact that riskier and higher loan amounts would produce a greater

financial reward to defendants, they encouraged and incentivized brokers to focus on

producing only those loans. As discussed previously, part of this structure was higher

commissions and other incentives to mortgage brokers who provided large and risky

loans. In return, the defendants passed on the excess compensation to the borrower by

way of increased origination fees, higher interest rates, and/or larger credit spreads above

the index value on ARMs.

44.     To further encourage brokers and agents to bring in more RML's, defendants

provided little to no oversight of broker's conduct. As long as brokers provided loans that

defendants could sell to the secondary market, defendants had the financial incentive to

continue receiving loans regardless of the documentation, or lack thereof, on the RML's.

13

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

45.     Also, to further the deceptive scheme, defendants created a high-pressure sales environment that propelled its mortgage brokers to meet high production goals and close as many loans as they could without regard to Plaintiff's ability to repay. Defendants' high-pressure sales environment also propelled mortgage brokers to sell the risky types of loans, such as ARMs with interest payment only feature and balloon payment because mortgage brokers could easily sell them by deceptively focusing borrowers' attention on the low initial monthly payments or interest rates thereby not disclosing the true financing cost of the loan. This system of compensation aided and abetted brokers in breaching their fiduciary duties to borrowers by inducing borrowers like Plaintiff to accept unfavorable loan terms without full disclosure of the borrowers' options and also compensated brokers beyond the reasonable value of the brokerage services they rendered.

### SPECIFIC ALLEGATIONS

46.     Plaintiff originally purchased the Subject Property for $142,000 in December of 1997. Defendants induced Plaintiff into refinancing in June of 2006. Defendant, Mortgage Lenders Network USA, Inc. induced Plaintiff into obtaining two mortgages

47.     Plaintiff was induced into obtaining a primary 30 year loan for $161,600 at refinancing. This loan provided a teaser introductory interest rate of 7.725 for a fixed period of three years. After three years, the interest rate became variable ranging between 7.725% to as high as 13.7250%, which in the long run were terms worse than the previous loan. The variable interest rate would be calculated by adding to the current index 5.225%.

14

48.     The terms of the secondary fifteen year loan of $40,400 provided for interest payment only feature with a balloon payment at the end of the life of the loan. The loan had a fixed high interest rate of 11.690% and in the year 2021, approximately $35,000 balloon payment is owed.

49.     From the onset of refinancing, Plaintiff's monthly payments went from $869 per month to almost $1500 and adjusting upwards for the life of the new loan, as well as a balloon payment.

50.     Plaintiff has a beneficial interest in the subject property which is estimated fair market value currently to be less than $140,000.

51.     Due to the introductory interest rate converting to ARM, balloon payment, and the house being significantly 'upside down', i.e. debt on property is higher than market value, Plaintiff is unable to refinance.

52.     Defendants disregarded and ignored Plaintiff's actual ability to pay off the loans and steered Plaintiff to risky loans to increase their own profit.

53.     The defendants induced Plaintiff to accept defendants' risky loan products by: (1) failing to clearly and conspicuously disclose how much and how soon the interest rate (and, therefore, the monthly payment) would increase when the initial rate expired and the significant increase in monthly payments he could eventually face; (2) failing to clearly and conspicuously disclose whether stated monthly payments included amounts due for insurance and taxes, which they generally did not; (3) failing to clearly and conspicuously disclose closing costs and fees; (4) making false promises that defendants could refinance the loan prior to a rate increase; (5) failing to disclose the true costs and

15

risks associated with the false promise that refinancing would be available as an exit

strategy when the defendants' loan became unaffordable after the interest rate adjusted;

(6) fraudulently promising that the value of the property would increase and therefore the

Plaintiff could easily refinance their property, (7) steering Plaintiff away from safer, fixed

rate, prime loans that he could afford and towards risky, ARMs with interest payment

only feature and balloon payment, in order to maximize their fees and profits; (8) false

marketing acts that were designed to mask the true costs and risks of the loans and to hide

the benefits of other, safer, loan products.

## COUNT I

### VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (AS TO ALL DEFENDANTS)

54.     Plaintiff realleges and incorporates by reference all paragraphs above, as though

fully set forth in this cause of action.

55.     A person engages in a deceptive trade practice within the meaning of the Uniform

Deceptive Practices Act (UDTPA) when he "causes a *likelihood* of confusion or of

misunderstanding," misrepresentations are made concerning approval or certification of a

product, the standard, quality or grade of a product is misrepresented, OR any other

conduct exists that similarly creates a likelihood of confusion or misunderstanding.

O.C.G.A. § 10-1-372(a)(2), (5), (7), (8), (12).

56.     Defendants as mortgage lenders, by engaging in illegal activity in the practice of

originating, transferring, assigning, selling and developing home mortgage loans in the

16

general marketplace via misrepresentation and fraud, have committed deceptive trade practices in the state of Georgia in violation of O.C.G.A. § 10-1-370 et seq.

57.     Defendants' fraudulent acts, deliberately misleading and false statements, change of underwriting standards and their clearly predatory business model is undoubtedly likely to lead to confusion and misunderstanding. As a result of Defendants' acts, there is likelihood of confusion and misunderstanding about the legitimacy of the RML sold by the Defendants, the actual terms and conditions of the RML and their application to Plaintiff, and the dangerous and unnecessary risks of financial and emotional hardship inherent in the RML that are unknowingly burdened by the consumer.

58.     Defendants engaged in such deceptive trade practices for their wrongful profit, intentionally preying on the Plaintiff's and other consumers' limited access to information, understanding and capacity regarding the product the Defendants designed, manufactured, and sold – the RML.

59.     Such practices included falsely promising that Plaintiff may refinance for an optimal fixed interest at a time of their choosing, falsely assuring the value of the property, and representing that the RML is approved based on Plaintiff's and the home's actual financial conditions even though the true primary standard was maximum resale value for the secondary market through exploitation of the Plaintiff.

60.     Plaintiff has been caused irreparable harm and great financial hardship due to Defendants' deceptive trade practices.

        WHEREFORE, Plaintiff prays for interlocutory and permanent injunctive relief as set forth below.

17

## COUNT II

## VIOLATION OF THE GEORGIA RESIDENTIAL MORTGAGE ACT
## (AS TO ALL DEFENDANTS)

61.      The Georgia Residential Mortgage Act (GRAMA) governs mortgage lenders and
the manner in which they transact with borrowers by explicitly prohibiting acts.  Yet
these are the very acts that were committed by the Defendants.

62.      Defendants violated O.C.G.A. § 7-1-1013 (1) by misrepresenting the material
facts, making false statements and promises, and submitting false statements and/or
documents that influenced, persuaded, and induced the Plaintiff in their application for
and execution of a mortgage loan, and, through agents or otherwise, pursued a course of
misrepresentation to the Plaintiff by use of fraudulent and/or unauthorized documents and
other means.

63.      Defendants violated O.C.G.A. § 7-1-1013(2) by misrepresenting and concealing
and causing another to misrepresent or conceal material factors, terms and conditions of
the mortgage transaction to which Defendants, mortgage lenders or brokers, were a party,
pertinent to the Plaintiff or in the Plaintiff's application for a mortgage loan.

64.      Defendants violated O.C.G.A. § 7-1-1013(6) by engaging in transactions,
practices, and course of business which were not in good faith or fair dealing, and which
operated as a fraud upon the Plaintiff, in connection with the attempted and actual
making of, purchase of, transfer of, and sale of Plaintiff's mortgage loan.

65.      Defendants violated O.C.G.A. § 7-1-1013(7) by engaging in fraudulent home
mortgage underwriting practices.

18

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

66.     Defendants violated O.C.G.A. § 7-1-1013 (9) by making, directly or indirectly, a
residential mortgage loan with the intent to foreclose on the borrower's property.    The
presumption per the GRMA statue is met in that at the time loan was made, there
was: (a) a lack of substantial benefit to the borrower; (b) lack of probability of full
payment of the loan by the borrower; and (c) there exists a significant proportion of
similarly foreclosed loans by the Defendants per their unfair, fraudulent and deceptive
acts practices, and systems.

67.     Defendants violated O.C.G.A. § 7-1-1013(10) collecting a mortgage debt by
extortionate means, in that Defendants do not have the right to collect on the illegal loan,
but have threatened negative credit reporting, declaration of default and foreclosure in an
extortionist attempt to collect.

68.     Through their misrepresentations, concealment of material facts, fraudulent
actions, and bad faith and predatory business practices set up to exploit the Plaintiff for
the Defendants' maximum profit, Defendants acted with wanton disregard as to the
benefit or harm to the Plaintiff in the making and servicing of the loan rampantly violated
explicit statutory restrictions per the GRMA.

69.     Furthermore, Defendants' actions were intentional, oppressive, and with fraud or
malice in conscious disregard of Plaintiff's consumer protection rights, thereby justifying
the award of punitive damages in an amount to be proven at trial.

70.     Defendants' fraud has caused Plaintiff damage in an amount to be determined at
trial. At a minimum, it includes the irreparable harm to Plaintiff's credit score and the
amount overpaid by Plaintiff on the fraudulently obtained RML on the Subject Property.

19

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT III

### BREACH OF IMPUTED DUTY PER
### GEORGIA FAIR BUSINESS PRACTICES ACT
### (AS TO ALL DEFENDANTS)

71.     Under the Georgia Fair Business Practices Act, Defendants owe a duty to the

Plaintiff, as businesses availing themselves of the marketplace, to act with due care,

diligence and good faith in developing, originating, marketing and selling their loan

products.

72.     Defendants breached their duty by deliberately leading Plaintiff into an

unnecessarily costly loan, failing to properly assess the suitability of the loan as to the

Plaintiff's ability to pay, artificially inflating the property value, failing to properly

inform and explain actual terms, conditions, costs and risks of the loan, and maintaining a

system of practice that rather than controlled, encouraged wanton and reckless conduct

towards the Plaintiff in regards to the Loan.

73.     As direct a result of the Defendants' breach, Plaintiff has been greatly harmed.

74.     Defendants' breach has caused Plaintiff damage in an amount to be determined at

trial. At a minimum, it includes the irreparable harm to Plaintiff's credit score and the

amount overpaid by Plaintiff on the fraudulently obtained RML on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT IV

### FRAUD
### (AS TO ALL DEFENDANTS)

20

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

75.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

76.     Defendants represented to Plaintiff that all the statements made to them in the origination and underwriting of the RML were true and that the value of the Subject Property which supported the loan was also true, while concealing Defendants' scheme of conspiracy to exploit Plaintiff for maximizing profits on the secondary market. Defendants' actions and representations were false and Defendants knew they were false and made such representations without regard to their truth.

77.     When Defendants made their false representations relating to the terms and conditions of the loan, the basis for the offering of such terms and conditions, and of the value of the property, Defendants made them with the intent that Plaintiff would rely on them and sign the loan documents and secure the Subject Property for said loan.

78.     Defendants represented themselves as loan experts and represented their employees or third parties such as the appraiser as experts in the field. Plaintiff relied on Defendants' representations and said reliance was reasonable due to Defendants' advertisement, assertions, licensing and experience in the mortgage industry.

79.     Plaintiff in turn did not have equal opportunity to discover the truth, and reasonably relied on Defendants' misrepresentations to Plaintiff's detriment. Defendants fraudulently induced Plaintiff into the loan, and wrongfully extracted payments pursuant to a fraudulent note and security deed.

21

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

80.     Furthermore, Defendants' actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's consumer protection rights, thereby justifying the award of punitive damages in an amount to be proven at trial.

81.     Defendants' fraud has caused Plaintiff damage in an amount to be determined at trial. At a minimum, it includes the irreparable harm to Plaintiff's credit score and the amount overpaid by Plaintiff on the fraudulently obtained RML on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT V

## FRAUD IN THE INDUCEMENT
## (AS TO ALL DEFENDANTS)

82.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

83.     In order to induce the Plaintiff to agree to risky ARMs with interest only payment feature and balloon payment, the defendants made a series of fraudulent promises. These promises include but are not limited to statements about the increase in value of the property, the ease that refinancing would occur, the glossing over of actual monthly payments and the real costs and risks of the interest rate, and the assurance that the value of the property was fair and legitimate.

84.     Plaintiff reasonably relied on defendants' representations and promises due to the fact that they were Lenders and mortgage brokers who were presented as experts in the field.

22

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

85.     Furthermore, defendants' action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's consumer protection rights thereby justifying the award of punitive damages in an amount to be proven at trial.

86.     Defendants' fraud has caused Plaintiff damage in an amount to be determined at trial. At a minimum, it includes irreparable harm to Plaintiff's credit score and the amount overpaid to defendants on the fraudulently obtained RMLs on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## COUNT VI

## CONVERSION
## (AS TO ALL DEFENDANTS)

87.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

88.     As mentioned previously, the defendants induced the Plaintiff to agree to the risky ARMs, which was exacerbated by the interest only payments and balloon payment, through fraud, deceit, and unfair and deceptive business practices in violation of Georgia state law. Further, the defendants set an unjustly high monthly payment by artificially inflating the value of the property to fraudulently justify a larger mortgage.

89.     By raising the monthly payment rate, the defendants extracted from the Plaintiff a higher amount than the Plaintiff legitimately should have paid.  Further, as required by defendants' own policies, any payments made in excess of the amount owed should be applied directly to the principle of the account. The defendants violated Georgia state law

23

and their own policies by applying the extra payments to interest that were not legitimately owed by the Plaintiff. The defendants improperly converted said funds of Plaintiff for their own use and benefit, thereby making more fraudulent, and risky loans to unsuspecting borrowers.

90.     The monies converted were specific as to source and trial.  Defendants extracted specific mortgage payments from the Plaintiff's bank account for deposit into a debt account labeled as a Residential Mortgage Loan for the Subject Property pursuant to an illegal loan, Defendants have committed unlawful conversion of Plaintiff's personal funds for their own unlawful use.

91.     Furthermore, defendants' actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's legal rights as they committed conversion justifying the award of punitive damages in an amount to be proven at trial.

92.     Due to the defendants' conversion, Plaintiff has suffered severe financial hardship.   Plaintiff has been damaged in the amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT VII

### QUIET TITLE
### (AS TO ALL DEFENDANTS)

93.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

24

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

94.     At all times herein, defendants committed acts of misrepresentations and fraud as to the terms of the loan, mortgage, and value of the property with the intent to exert undue influence.

95.     Plaintiff were under unfair persuasion amounting to undue influence because Defendants positioned themselves in the market where the Plaintiff was justified in assuming that the defendants would not act in a manner inconsistent with Plaintiff's welfare and best interests.

96.     At all time herein, defendants gained unfair persuasion and undue influence by improper means including but not limited to misrepresentations, undue flattery, and fraud.

97.     Defendants by fraud received an iniquitous deed to secure debt to the property for a loan that Plaintiff should not have given or been allowed to take. This loan would not have taken place but for Defendants' wrongful conduct.

98.     Furthermore, defendants' action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's rights thereby justifying the award of punitive damages in the amount to be proven at trial

99.     Defendants have created an illegal cloud on title. Plaintiff has suffered severe financial hardship as a result. Plaintiff requests that the court invalidate the deed of trust on the property.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## COUNT VIII

## LIBEL

25

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

(AS TO ALL DEFENDANTS)

100.     Plaintiff realleges and incorporates by reference all paragraphs above, as though
         fully set forth in this cause of action.

101.     In an attempt to coerce payment out of the Plaintiff in regards to the fraudulently
         obtained RMLs and the defendants threatened and/or actually reported to credit agencies
         and other third parties that Plaintiff were in default on the RMLs and for payments that
         were incorrectly assessed.

102.     Defendants knowingly made these statements with full knowledge of defendants'
         wrongful and fraudulent conduct and the defendants were fully aware that the RMLs was
         obtained illicitly. Even with the knowledge of their wrongful acts and illegally obtained
         RMLs, the defendants still made false statements about the amount that the Plaintiff owed
         and did not pay to third parties in a malicious attempt to defame Plaintiff's reputation and
         lower the credit score.

103.     Defendants again exploited Plaintiff's vulnerable position as a consumer, subject
         to whatever statements the Defendants chose to publish to third parties because
         Defendants are licensed mortgage lenders of a large scale.  Plaintiff in turn continues to
         suffer great financial losses and damages as a result of this harm to her reputation.

104.     Furthermore, defendants' actions were intentional, oppressive, and with fraud or
         malice in conscious disregard of Plaintiff's legal rights thereby justifying the award of
         punitive damages in the amount to be proven at trial.

26

105.      Due to the defendants' libel, Plaintiff has suffered severe financial hardship.

Plaintiff has been damaged in the amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT IX

### CIVIL CONSPIRACY
### (AS TO ALL DEFENDANTS)

106.      Plaintiff realleges and incorporates by reference all paragraphs above, as though

fully set forth in this cause of action.

107.      Defendants, and each of them, agreed to form and operate a business relationship

wherein the originator of the loan would process the loan application in a manner that

each Defendant knew or should have known was malicious, wrongful, and unlawful for

the reasons stated in this complaint. The business relationship between the parties gave

the originator of the loan the right to assign, sell or otherwise transfer said unlawfully

originated loan to its fellow defendants, which each defendant would, in turn, acquire the

right to sell, assign or otherwise transfer for a profit.

108.      As a result of this conduct, defendants, and each of them, damaged Plaintiff in an

amount to be proven at trial.

WHERFORE, Plaintiff prays for judgment as set forth below;

## COUNT X

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)
### (AS TO ALL DEFENDANTS)

27

109.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

110.    Defendants violated RICO pursuant to O.C.G.A. §16-14-1 et seq.  Each time Plaintiff's fraudulent loan was refinanced, assigned and transferred; each time Plaintiff loan was used as means to extract inflated payments from Plaintiff for the Defendants' benefit; each time the profits generated from Plaintiff's loan was used to perpetuate further acts of fraud by issuing and selling more fraudulent loans throughout the state, Defendants committed multiple predicate acts of fraud.  Moreover, in order to perpetuate these multiple frauds, Defendants used the mail in furtherance of their scheme.

111.    Due to the Defendants' RICO violations, Plaintiff has suffered severe financial hardship.  Plaintiff has been damaged in the amount to be proven at trial.  Second, Plaintiff requests reasonable attorney fees and costs.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNY XI

### PETITION FOR INTERLOCUTORY INJUNCTIVE RELIEF
### (AS TO ALL DEFENDANTS)

112.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

113.    Defendants are licensed institutional lending experts with the privilege of engaging the general marketplace for the sale of an exclusive service.  And they are given this privilege on the condition that they are held to a higher standard of regulatory compliance, fair practice, duty, conscience, expertise and competence, among others.

28

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Yet the Defendants in this case have exploited their public privilege and engaged in systematic misconduct, reaping profits not only from the Plaintiff's home mortgage loan, but from a larger scheme of profiteering off of illegal mortgages spanning over more than a decade, throughout the country. Plaintiff's case as alleged and to be proven at trial, leads to not only preclusion of strict enforcement of the security deed, but also will likely result in permanent injunction and damages both actual and punitive against the Defendants.

114.    The Plaintiff has made multiple clear and convincing cause of actions in which the Plaintiff is likely to succeed. Those arguments, including arguments for fraud, fraud in the inducement, deceptive business practices, and others, are factually supported and are likely to lead to a decision in favor of Plaintiff. On this ground alone, the court may grant the temporary restraining order as permitted under O.C.G.A. §§9-5-1 and 9-11-65.

115.    Defendants threatened wrongful conduct to foreclose and sell the property to a third party, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff by the foreclosure and forced sale of the property. The Subject Property is not just property but home to the Plaintiff, the wrongful loss of which is unique and cannot be adequately remedied at law. Further, any foreclosure and forced sale of the property will reduce the value of the property and jeopardize Plaintiff's interest in the Property. On this ground alone, the court may grant the temporary restraining order as permitted under O.C.G.A. §§9-5-1 and 9-11-65.

116.    Plaintiff has no adequate remedy at law for the injuries that are threatened as a foreclosure and forced sale would wrongfully deprive Plaintiff of their property rights,

29

create extensive disruption and harm in every aspect of Plaintiff's life, and reduce Plaintiff's equity interest in the property. On this ground alone, the court may grant the temporary restraining order as permitted under O.C.G.A. §§9-5-1 and 9-11-65.

117.    As a proximate result of defendants' wrongful conduct, Plaintiff equity interest and potential sale has been totally lost. Plaintiff will be further damaged if defendants are allowed to proceed with the sale of the foreclosed property. The full amount of this damage is not now known to Plaintiff, and Plaintiff will amend this complaint to state this amount when it becomes known to them or on proof of the damages.

118.    An interlocutory injunction enjoining Defendants from foreclosure upon the Subject Property maintains the status quo, prevents perpetuation of irreparable harm and further tortuous acts, serves the principals of justice and equity, and is strongly supported as to the merits under the facts and legal arguments outlined herein.

WHEREFORE, Plaintiff prays for interlocutory injunctive relief to enjoin Defendants from foreclosing on the Subject Property.

## AS TO ALL CAUSES OF ACTION PLAINTIFF PRAY FOR JUDGMENT AS FOLLOWS:

1.    Pursuant to O.C.G.A. § 10-1-372, et. seq., that all defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them be permanently enjoined from making any untrue or misleading statements or falsely reporting negative credit to reporting agencies.

2.    Pursuant to O.C.G.A. § 10-1-372, et. seq., that the Court make such orders or judgments as may be necessary to prevent the use or employment by any defendant of

30

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

any practices which violate, or which may be necessary to restore to any person

interest any money or property, real or personal, which may have been acquired by

means of any such practices

3.   Pursuant to O.C.G.A. § 10-1-372, et. seq., that this court make such order or

judgments as may be necessary to prevent the use of employment by any defendant of

any practice which constitutes a deceptive trade practice or as may be necessary to

restore to any person in interest any money or property, real or personal, which may

have been acquired by means of such unlawful actions.

4.   Damages sustained by the Plaintiff due to defendants wrongful acts in excess of the

jurisdictional limits in an amount to be proven at trial;

5.   For interest on the sum at the rate of 10% per annum;

6.   For Rescission;

7.   For punitive damages against Defendants due to their intentional and wrongful acts;

8.   That Plaintiff recover reasonable attorneys fees and for to recover its cost of suit;

9.   For such other relief that the Court deems just, proper, and equitable.


DATED: _May 8_, 2009                          Respectfully Submitted,


                                              Irene Kim, Esq.
                                              Bar # 141924
                                              Geerdes and Kim, LLC
                                              3483 Satellite Blvd.
                                              Duluth, Georgia 30096
                                              404-257-1777

31


COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

-257-1050 (fax)
**ATTORNEY FOR PLAINTIFF**

32

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Print Form

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

Chong Ae Han

CIVIL ACTION () 9 A :: 4 3 2 0. - UD
NUMBER

PLAINTIFF

VS.

Mortgage Lenders Network USA, Inc., GMAC

, LLC; America's Servicing Company; Wells

Fargo Bank. N.A: Mortgage Electronic
Registration Systems,    DEFENDANT
INC.;and Does 1-50 inclusive

SUMMONS

TO THE ABOVE NAMED DEFENDANT:

    You are hereby summoned and required to file with the Clerk of Said Court and serve upon the Plaintiff's attorney, whose name and address is:
IRENE KIM, ESQ.
Bar # 141924
Geerdes and Kim, LLC
3483 Satellite Blvd.
Suite 221 South
Duluth, Georgia 30096
404-257-1777
an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This    8    day of    May    , 20 09.

                    Tom Lawler
                    Clerk of Superior Court

            By: Christy McMullen
                    Deputy Clerk

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

COC SC-1 Revised 12-99